WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Valerie Jazmine Cervantes,<br><br>Defendant. | No. CR-19-02432-001-TUC-SHR (EJM)<br><br>**Order Adopting Report and Recommendation** |

Pending before the Court is a Report and Recommendation ("R&R") (Doc. 181) issued by United States Magistrate Judge Eric J. Markovich, recommending the Court find Defendant Valerie Cervantes remains incompetent to stand trial, notwithstanding the substantial efforts made to restore her to competency. The Government has filed an Objections (Doc. 184) and Defendant has filed a Response (Doc. 185). For the reasons that follow, the Government's Objections are rejected, and the Court adopts the R&R.

## I.   Standard of Review

When reviewing a magistrate judge's R&R, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis in original). However, objections to R&Rs "are not to be construed as a second opportunity

to present the arguments already considered by the Magistrate Judge." *Betancourt v. Ace Ins. Co. of Puerto Rico*, 313 F. Supp. 2d 32, 34 (D.P.R. 2004); *see also Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) ("The purpose of the Federal Magistrates Act is to relieve courts of unnecessary work" and "[t]here is no increase in efficiency, and much extra work, when a party attempts to relitigate every argument which it presented to the Magistrate Judge.").

## II. Background

The Government does not object to, and this Court adopts, the following facts as set forth in the R&R:

> On January 14, 2020, defense counsel filed a motion for a competency examination. This Court granted the motion and appointed Dr. Katrina Buwalda to conduct a competency evaluation of Ms. Cervantes. Dr. Buwalda authored a report dated March 25, 2020, in which she concluded that Ms. Cervantes was not competent to stand trial, but possibly restorable to competency. (Doc. 68.)
>
> At a status conference on June 3, 2020 to address Dr. Buwalda's report, the Court advised the parties that it planned to appoint Dr. Barry Morenz to conduct another competency evaluation of Ms. Cervantes. In an Order dated June 19, 2020, the Court appointed Dr. Barry Morenz to conduct a competency examination, and also opine on whether he believes that Ms. Cervantes is restorable to competency if he agreed with Dr. Buwalda's conclusion. (Doc. 84.) Dr. Morenz authored a report dated September 25, 2020, in which he concluded that Ms. Cervantes was not competent to stand trial, and that there was not a reasonable probability that she could be restored to competency.
>
> At a status hearing on January 13, 2021, both the defense and the government stipulated that Ms. Cervantes was not competent based on Dr. Morenz's opinion. The government moved to have Ms. Cervantes sent for inpatient restoration proceedings at a BOP medical facility. The Court granted that motion in an Order dated July 2, 2021.
>
> Ms. Cervantes arrived at the Federal Medical Center at Carswell on August 4, 2021. She spent approximately four months at that facility in its competency restoration program. She attended restoration classes weekly, and upon completion

> of the restoration program, was evaluated by Dr. Sadie Doll. Dr. Sadie Doll authored a report dated December 13, 2021, in which she concluded that Ms. Cervantes had been restored to competency.
>
> The Court held a status hearing on January 31, 2022 to address Dr. Doll's report. At that time, defense counsel was not prepared to stipulate to Dr. Doll's conclusion that Ms. Cervantes had been restored to competency. Counsel requested more time to meet with Ms. Cervantes prior to making that decision.
>
> On March 9, 2022, the Court granted defense counsel's motion requesting that Dr. Morenz conduct a second competency evaluation. Dr. Morenz authored a report dated May 6, 2022, in which he concluded that Ms. Cervantes was still not competent to proceed to trial. Once again, he provided his opinion that she could not be restored to competency.

(Doc. 181 at 2–3.)

On August 17, 2022, Magistrate Judge Markovich held a competency hearing, during which Dr. Sadie Doll, Dr. Barry Morenz, and Defendant's grandmother testified. (Doc. 171.) Because neither party objects to any of the facts set forth in the R&R, the Court will not recite Magistrate Judge Markovich's detailed description of the testimony presented beyond the following summary of the doctors' testimony.

Dr. Doll started working at the Federal Bureau of Prisons ("BOP") in 2017 at the Federal Correction Complex in Pollock, Louisiana, and became a licensed psychologist in Louisiana in 2019. (Doc. 181 at 3–4, 10.) After 2.5 years as a staff psychologist, she "moved into the forensic psychologist position" and, in 2021, became licensed in Texas. (*Id.* at 3–4, 10.) Dr. Doll currently serves as a forensic psychologist and "specialty program coordinator at the Federal Medical Center at Carswell ("FMC Carswell") in Texas—the facility at which Defendant completed the above-mentioned competency restoration program. (*Id.* at 3–4.) Before evaluating Defendant, Dr. Doll had been involved in competency restoration for about 1.5 years, and she estimated she conducted at least 20 competency evaluations. (*Id.* at 10.) Dr. Doll estimated that she has concluded a patient is not competent in 20–30% of her evaluations; however, the majority of that percentage is

1  made up of initial competency evaluations—not evaluations after restoration proceedings.
2  (*Id.* at 9.)

3        Dr. Doll's primary diagnosis of Defendant was "mild neurocognitive disorder due
4  to traumatic brain injury (TBI)" because "that's what [she] saw as being responsible for
5  [Defendant's] impairment." (Doc. 181 at 7–8.) Secondarily, Dr. Doll diagnosed Defendant
6  with borderline personality disorder and major depressive disorder, but noted the "aspects
7  of borderline personality disorder were less pervasive" and Defendant did not have a major
8  depressive episode while at FMC Carswell. (*Id.* at 8.) Dr. Doll explained the highly
9  structured environment at FMC Carswell allowed Defendant to focus on and complete the
10 tasks at hand in the program. (*Id.* at 8.) During Defendant's time at FMC Carswell,
11 Dr. Doll conducted at least six formal interviews and assessments of Defendant. (*Id.* 9–
12 10.)

13       Dr. Doll testified that Defendant's "ability to think through an incorrect response
14 [to a question] or provide an elaboration from a previous answer" "spoke to her rational
15 understanding of the question at hand." (Doc. 181 at 6.) Dr. Doll felt Defendant had been
16 engaged in the competency restoration classes and was "very motivated" because she saw
17 Defendant "taking notes above and beyond" what she had seen from other program
18 participants, and staff had observed Defendant studying, as Defendant apparently had given
19 up reading books so she could focus on studying. (*Id.* at 7.) Dr. Doll opined that, "[a]t the
20 time of the evaluation period conclusion," Defendant was competent to stand trial, but
21 explained competency is "fluid" because it "can change over time," as a once competent
22 individual "could then decompensate and be not competent the next day." (*Id.* at 9.)
23 Dr. Doll also recommended Defendant continue with competency classes. (*Id.* at 14.)

24       Dr. Morenz obtained his medical degree in 1978 and his psychiatry degree in 1982,
25 had been board-certified in forensic psychiatry for over 20 years (until he allowed the
26 certification to lapse because maintaining it required "quite a lot of rigmarole"). (Doc. 181
27 at 17–18.) Before evaluating Defendant, he had done over one thousand competency
28 evaluations. (Doc. 181 at 17–18.) Dr. Morenz estimates he has concluded a defendant is

incompetent to stand trial in about 5% of his evaluations. (*Id.* at 18.)

Dr. Morenz evaluated Defendant twice: on July 30, 2020 (before Defendant participated in the restoration program) and May 6, 2022 (after Defendant completed and was released from the restoration program). (Doc. 181 at 19.) Dr. Morenz reviewed Defendant's medical records related to her TBI, which showed Defendant had suffered a skull fracture over the left temporal area, brain contusions, subdural hematomas on the right side of the brain, and significant intracranial damage as an adolescent. (*Id.*) Dr. Morenz explained: "a typical rule of thumb is that someone can look really awful initially after a head injury like this, and then they will make improvements," but after about one year or so, "they level off and plateau, and they're not going to probably get a whole lot better after that." (*Id.* at 19–20.) Dr. Morenz further opined Defendant's impairments due to her TBI from many years ago are "probably not going to improve much," and although there is potential Defendant can be taught "some adaptive sort of strategies to improve her functionality to some degree," "the basic impairments are not going to go away." (*Id.* at 20.) He also noted TBI cannot be improved with medication and "you can't really medicate . . . and improve the memory deficits . . . associated with this kind of brain injury." (*Id.* at 20.) After both evaluations, Dr. Morenz concluded Defendant is "not competent to stand trial, and that it was unlikely that she could be restored." (*Id.* at 21.)

When asked about Dr. Doll's conclusions, Dr. Morenz said he was "surprised" Defendant had been "declared restored at all" and was "surprised by the kinds of descriptions that Dr. Doll put forth about what Defendant learned." (Doc. 181 at 24.) Dr. Morenz also explained that although things "had improved" some between his first and second evaluation, he still believed Defendant suffers from "significant kinds of cognitive impairments" that were "still very much present and affecting her competency." (*Id.*) When asked to compare his two evaluations of Defendant, Dr. Morenz explained:

> The only difference was she had a little better understanding of some of the personnel and processes of court. But otherwise she appeared the same, she behaved the same. The way she

>processed and understood information and was making decisions about her life and how she was functioning day to day had not changed at all.

(*Id.* at 26.) He disagreed with Dr. Doll's diagnosis of borderline personality disorder and instead ascribes Defendant's personality problems to her TBI. (*Id.* at 27.) Dr. Morenz further opined that Dr. Doll had not given sufficient weight to "how serious the impacts of [Defendant's] deficits are on her actual day-to-day functioning." (*Id.*) Most importantly, Dr. Morenz opined that not only did Defendant's time at FMC Carswell not restore her to competency as Dr. Doll had found before she was released from that facility, but Dr. Morenz believes there is not a reasonable probability that Defendant can be restored to competency in the future. (Doc. 181 at 29.) Dr. Morenz further explained he does not believe Defendant "could be restored to competency any other way." (*Id.*)

Magistrate Judge Markovich took the matter under advisement and, on November 3, 2022, issued his R&R. The R&R extensively cites the testimony provided and thoroughly explains why he gave more weight to Dr. Morenz's opinion, and concluded the government had not met its burden of showing Defendant understands the nature and consequences of the proceedings against her or can assist her attorney in her defense. Therefore, Defendant remains incompetent to stand trial. (Doc. 181 at 51.) Magistrate Judge Markovich further concluded "another attempt at restoration is not warranted" because, based on the testimony presented, despite Defendant's efforts during her time at FMC Carswell, her TBI "is not going to improve over another four months at FMC Carswell, or frankly, for the rest of her life." (*Id.* at 50.) Magistrate Judge Markovich advised the parties of their right to file written objections within 14 days and warned: "Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to de novo consideration of the issues." (*Id.* at 51–51.)

### III. Discussion

The Government does not object to the R&R's recommendation that this Court find Defendant incompetent to stand trial; rather, the Government objects "to the extent the

- 6 -

magistrate court suggested the defendant is not restorable," and asks the Court "to commit the defendant to the custody of the Attorney General" pursuant to 18 U.S.C. § 4241(d).[1] (Doc. 184 at 1.) In response, Defendant argues the Government's Objections should be denied because they were "not timely and fail[] to address the substance of Judge Markovich's ruling." (Doc. 185 at 4.)

According to the Government, the R&R "neglects the fact that the defendant was restored to competency prior to the defendant's release from FMC Carswell in December 2021." (Doc. 184 at 1.) The Government asserts: "In the eight months after her release from FMC Carswell the defendant no longer had the structured environment provided by FMC Carswell and most likely decompensated." (*Id.* at 2.) First, the R&R did not actually recommend the Court find Defendant was not restorable. Rather, the R&R explains the Government had "intimated that if the Court finds [Defendant] has not been restored to competency, it will move the Court to order that she again be sent for restoration proceedings," and, having found Dr. Morenz's opinion more credible than Dr. Doll's, the Court said it "would deny a government motion to return [Defendant] to a BOP medical facility for another attempt at restoration." (Doc. 181 at 50–51.) Nonetheless, the Government's argument is unavailing. The R&R did not "neglect" the fact Dr. Doll found Defendant was competent before she was released from FMC Carswell. Indeed, the R&R specifically noted Dr. Doll's December 13, 2021 report, in which she concluded Defendant had been restored to competency. (*Id.* at 3:5–6.) The Magistrate Judge, however, thoroughly explained why he assigned "greater weight to the findings and opinions of Dr. Morenz than to those of Dr. Doll" when considering their divergent opinions. (*Id.* at 38.) Assigning greater weight and credibility to one expert over another is within the province of the Magistrate Judge and, having reviewed the record, this Court agrees with

---

[1] The Government also anticipated Defendant would raise certain issues related to Defendant's return to custody for restoration and the Government has incorporated by reference its previously mooted Motion to Determine Competency (Doc. 89) and its response to Defendant's Objections to Confinement (Doc. 106). (Doc. 184 at 1.) Those issues—which comprise the bulk of the Government's Objections—however, were not before the Magistrate Judge during the competency hearing and were not at issue in the R&R. Accordingly, this Court declines to address them.

the R&R's conclusions that Dr. Morenz's opinion is more credible than Dr. Doll's in this case. *See United States v. Frank*, 956 F.2d 872, 875 (9th Cir. 1991).

Moreover, the Government's assertion Defendant "most likely decompensated" since being released from the structured environment of FMC Carswell belies its assertion that Defendant is restorable. This, along with Dr. Doll's recommendation Defendant continue with restoration classes even after finding Defendant had been restored, demonstrates Defendant is very likely to decompensate after leaving an in-custody program. In other words, Defendant would need to remain in such a program while she awaits and goes through trial in order to be restored. Section 4241(d)(1), however, presumes an incompetent defendant will be hospitalized for no more than four months at a time during restoration proceedings. 18 U.S.C. § 4241(d)(1) (if court finds defendant incompetent, court shall commit defendant to custody of Attorney General, who "shall hospitalize the defendant for treatment in a suitable facility" "for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward" and "for an additional reasonable period of time until" "his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward"). That is, the Court can only order Defendant committed for restoration beyond the four months she spent at FMC Carswell if it finds there is a "substantial probability" that within such additional time, she will be restored to competency. For the reasons stated in the R&R and in this Order, the Court finds the Government has not shown that substantial probability exists here.

As to Defendant's argument the Government's Objections should be rejected due to untimeliness, the Court accepts the Government's Objections, despite the apparent misapprehension of deadlines. The R&R was signed on November 2, 2022, and was docketed on November 3, 2022. Accordingly, objections should have been filed on or before November 17. On November 16, the Government moved for a 14-day extension to

file its objections, in which it apparently believed the R&R was docketed November 4 and therefore calculated its deadline as November 18. (Doc. 183.) On November 18, the Government filed its Objections (Doc. 184), and the Court denied the motion for extension as moot (Doc. 186). Notwithstanding the Government's misapprehension of when the R&R was filed and its subsequent miscalculation of its deadline, in the interest of justice, the Court will accept the Objections as timely.

Accordingly,

**IT IS ORDERED** Magistrate Judge Markovich's Report and Recommendation (Doc. 181) is **accepted and adopted** in its entirety.

Dated this 19th day of January, 2023.

Honorable Scott H. Rash
United States District Judge